UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BYRON DRAY CROFTS,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>SUE WESSELS and JOE EILERS,<br><br>　　　Defendants. | Case No. 1:17-cv-00058-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Defendants Sue Wessels ("Wessels") and Joe Eilers' ("Eilers") Motion for Summary Judgment (Dkt. 27), and Plaintiff Byron Dray Crofts' ("Crofts") Motion to Amend his Complaint (Dkt. 33). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT Defendants' Motion for Summary Judgment (Dkt. 27) and DENY Crofts' Motion to Amend his Complaint (Dkt. 33).

# II. BACKGROUND

Crofts is an inmate in the custody of the Idaho Department of Correction (IDOC). He resides in the maximum-security facility (IMSI). He asserts that, on May 4, 2016, he

was placed in a cell with Joe Lloyd ("Lloyd"), a former member of the Severely Violent Criminals ("SVC") gang.[1]

Prior to his placement with Lloyd, Crofts had expressed dissatisfaction and concern over being housed in general population on tier J-3 of the prison facility, because SVC and Aryan Knights ("AK") gang members were housed there as well. Crofts was upset about this placement because he was stabbed by SVC and AK members in 2002 and assaulted by AK members in 2006.

According to Crofts, he made several efforts to inform Defendants that he felt his life was in danger when he was placed on J-3, but his requests to be moved were refused. Following his placement with Lloyd, he told Eilers that he and Lloyd were not getting along, and Eilers told him he would "move [him] . . . in the morning." Dkt. 15, at 3. Crofts asserts that, because he was fearful for his safety, he had to "act out" so that he would be taken to administrative segregation, away from the gang members he feared. Dkt. 3-1, at 15.

Crofts claims that in March of 2016, after he requested protective custody ("PC") placement, the Restrictive Housing Placement Committee ("RHPC") recommended that he be placed in PC, and Defendants did not comply with this recommendation. However, since Crofts filed his Complaint, it has become clear that the RHPC did not recommend

---

[1] Crofts sometimes refers to Lloyd in a manner that makes it sound like he was a current member of the SVC gang (*see* Dkt. 3, at 4 (referring to Lloyd as a "known gang member")) and at other times he refers to Lloyd as a former member of the SVC (*see* Dkt. 29, at 3 (referring to Lloyd as a "dropout" of the SVC gang)). Defendants state that Lloyd was a former member of the SVC gang, who, like Crofts, had been attacked by a gang in the past. Dkt. 27-1, at 7.

that he be placed in protective custody. Instead, it recommended that he remain in close custody general population. Dkt. 27-25.

Crofts' confusion on this point is understandable because, on a form memorializing his decision to not place Crofts in PC, the prison warden mistakenly stated that the RHPC recommended PC. This was simply an error. At the conclusion of the March 2016 hearing, RHPC actually recommended that Crofts remain in close custody general population, which is precisely what occurred. *Id.*; *see also* Dkt. 27-1, at 6-7.

A prison staff member subsequently explained that Crofts did not provide enough specific, current information that would warrant PC placement—"stating in broad terms" his fear of the AK and SVC gangs was not enough. Dkt. 3-1, at 15. Prison staff also cited Crofts' own history of violence as a reason for the PC denial. *Id.*

The RHPC held another hearing in June of 2016. At this hearing, Crofts revealed for the first time that Lloyd threatened him. Dkt. 27-29, at 4-6. However, Crofts refused to elaborate on the nature of this threat. Nonetheless, following this hearing, the RHPC recommended that Crofts be removed from general population. This recommendation was followed.

Crofts filed this lawsuit on February 3, 2017. He states that he is seeking injunctive relief. Dkt. 15, at 2. Specifically, he asks the Court to order Defendants to stop housing him "with and around . . . AK Aryan Knights and SVC and give Crofts proper safe housing and programs to better himself." *Id.*

This Court conducted an Initial Review of Crofts' Complaint on May 26, 2017 and found that he had pleaded a plausible "failure-to-protect" claim arising under the Eighth

MEMORANDUM DECISION AND ORDER - 3

Amendment. Dkt. 13, at 5. Defendants' moved for summary judgment on April 30, 2018. Dkt. 27. After the Motion for Summary Judgment was fully briefed, Crofts filed his Motion to Amend his Complaint. Dkt. 33.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). Importantly, the Court does not make credibility determinations at this stage of the litigation. Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Zetwick*, 850 F.3d at 441. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with

"reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment (Dkt. 27)

The Eighth Amendment protects prisoners against cruel and unusual punishment. Under this standard, inmates have a right to be incarcerated in a reasonably safe environment. "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982), overruled on other grounds. This right includes being protected from constant threats of assault from other inmates. *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981). An inmate does not need to wait until he is actually assaulted to obtain relief. *Id.*

To prevail on an Eighth Amendment failure-to-protect claim, an inmate must satisfy both parts of a two-pronged test. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The risk alleged must be "objectively, sufficiently serious." *Id.* (citations and punctuation omitted).

Second, the prison officials must have acted with deliberate indifference to prisoner health or safety. *Id.* "Deliberate indifference" is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id.* at 837. A prison official may know of a substantial risk "from the very fact that the risk was obvious." *Id*. at 840.

However, prison officials are not liable if 'they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" *Id.* at 844. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' not absolute safety." *Savocchio v. Crabtree*, No. CV-97-1698-ST, 1999 WL 562692, at *5 (D. Or. July 12, 1999) (quoting *Farmer*, 511 U.S. at 844).

> i. *First Prong of the Farmer Test*

The Court first asks whether housing Crofts on J-3 (and subsequently placing him in a cell with Lloyd) presented an objective, substantial risk of serious harm. Importantly, general fears about being harmed by a fellow inmate or a prison gang are not enough to satisfy this requirement. As one district court explained:

> Inmates have no claim under the Eighth Amendment based on a general unsubstantiated fear of assault by a fellow inmate or by a specific group. Otherwise, courts would be flooded with prisoner litigation. Instead, to satisfy *Farmer*, the prisoner must present evidence of a particularized fear based upon prior threats or upon members of a specific group who have the motive and the ability to commit an assault themselves or through intermediaries.

*Savocchio*, 1999 WL 562692, at *9.

Here, Crofts does have unfortunate history with the SVC and AK gangs. This includes a stabbing in 2002 and an assault in 2006. However, none of the individuals

involved in the 2002 or 2006 attacks were housed on J-3 when Crofts was moved there in 2016. Wessels has explained that when an inmate "has an active conflict with another inmate, a safety concern is added to their file. As of March 28, 2016, four inmates were listed as safety concerns in [Crofts'] file. None of them were housed on J-3 while [Crofts] was there." Dkt. 29-3, at 12. In fact, since the 2006 assault, Defendants are unaware of any incident where Crofts was the victim of violence perpetrated by another inmate (see Dkt. 29-3, at 15), nor has Crofts alleged—at least with any specificity—that he has been attacked since.

That said, the Court does not wish to minimize the attacks Crofts survived or the related fear that undoubtably followed. However, the Court's inquiry is not whether Crofts' fears were understandable. Instead, the Court asks whether housing him on J-3 and forcing him to share a cell with Lloyd presented an objective, substantial risk of serious harm.

The Court has scoured the record for any indication that moving Crofts to J-3 or into a cell with Lloyd posed such a risk. This search revealed two items worth discussion.

First, on May 12, 2016, Crofts completed an "Offender Concern Form." Dkt. 29, at 19. Amongst his oft repeated claims that he did not get along well with AK and SVC members, and another request to be moved out of general population, he writes that AK and SVC members "keep jumping me." He repeated this allegation in a grievance form completed later that month. *Id.* at 20-22.

The plain meaning of this phrase leads one to believe violent attacks were repeatedly occurring. Yet, Crofts never claimed to be injured at the time, nor has he

MEMORANDUM DECISION AND ORDER - 7

claimed as much since. In fact, Crofts' Complaint is silent as to these alleged events. Additionally, some of Crofts' previous Offender Concern Forms stated that he was "jumped" before, in reference to the 2002 and 2006 attacks. *See*, *e.g.*, Dkt. 29-1, at 5. Thus, it is unclear whether Crofts' statement that AK and SVC members "keep jumping [him]" was simply another reference to the attacks from years before.

Nonetheless, for purposes of summary judgment, the Court construes the facts in the light most favorable to Crofts. However, Crofts does have the responsibility to set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Oskar*, 247 F.3d at 997. Vague allegations buried in the record, and never mentioned by Crofts since, are not enough to meet this burden, and do not create a genuine issue for trial. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (explaining that district courts "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment" and stating that the "nonmoving party's burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden—for example, by remaining silent—its opportunity is waived and its case wagered") (citations and punctuation omitted).

The second item worth discussion is a document that summarizes the hearing held on June 3, 2016, regarding Crofts' safety concerns. At this hearing, Crofts alleged for the first time that he was threatened by Lloyd when they shared a cell for one day. Dkt. 27-29, at 4-6. Crofts refused to elaborate on the nature of the threat at the meeting and has

never mentioned it in this case. Once again, the Court finds that this vague allegation, buried in the record, does not create a genuine issue for trial.

In sum, the Court finds no evidence to support a reasonable finding that housing Crofts on J-3 presented an objective, substantial risk of serious harm. As such, Crofts cannot succeed on his Eighth Amendment claim, and summary judgment is appropriate.

    ii.    *Second Prong of the Farmer Test*

Even if the Court assumes that the first prong of the *Farmer* test is satisfied, summary judgment is still appropriate because Defendants did not act with deliberate indifference to the risks posed to Crofts.[2]

To establish deliberate indifference, Crofts must show that the Defendants were (a) subjectively aware of the substantial risk of serious harm and (b) failed to adequately respond. *Farmer*, 511 U.S. at 828. Here, no reasonable juror could find Defendants' response inadequate.

Despite Crofts' frequent requests to be removed from J-3, Defendants had good cause to believe that tier was reasonably safe for him. As already noted, none of Crofts' prior attackers were housed on J-3 at the time, nor were there any inmates with whom Crofts had an active conflict. There is no evidence to suggest J-3 was experiencing high rates of inmate violence, nor has Crofts alleged—other than the vague statement about "being jumped"—that he was ever targeted or attacked.

---

[2] Although Defendants were members of the RHPC, it is not clear whether they could both be considered responsible for Crofts' placement on J-3 and the assignment to share a cell with Lloyd. Nonetheless, the Court will analyze this issue as if Defendants were sufficiently responsible for these housing determinations.

The Ninth Circuit has explained that the Eighth Amendment requires more than a "mere threat" of possible harm. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) ("The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur."). Here, Crofts' history with AK and SVC members makes his fears understandable, but it did not warrant removal from J-3.

As for Crofts' placement in a cell with Lloyd, this only lasted for a single day. After Crofts complained that he was not getting along with Lloyd, Eilers told him he would move him the next morning. Dkt. 15, at 3. Crofts did not tell Eilers that Lloyd threatened him, nor did he claim that violence was likely to occur. He simply asked for a change because he and Lloyd were not getting along. Expecting prison officials to move an inmate as soon as they express that they are not getting along with their cellmate is unreasonable, and Eilers' response that he would move Crofts the next morning does not amount to deliberate indifference. Crofts' revelation during the June 3, 2016, RHPC hearing does not change this finding because Eilers was not aware of this threat at the time Crofts initially asked to be moved, and the RHPC committee recommended that Crofts be removed from general population following that hearing.

The Supreme Court has made clear: "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci v. DeStefano*, 557 U.S. 557, 586

(2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Here, the record taken as a whole could not lead a rational trier of fact to find that Defendants' response to Crofts' safety concerns was unreasonable. Nor does the record justify the relief Crofts seeks. As such, the Court GRANTS Defendants' Motion for Summary Judgment. Dkt. 27.

### B. Crofts' Motion to File an Amended Complaint (Dkt. 33)

In this Motion, Crofts seeks leave of the Court to amend his complaint to add Warden Alberto Ramirez as a Defendant in this action. Dkt. 33, at 1. He also intends to change his claims from a request for injunctive relief against Defendants in their official capacities to a claim against Defendants in their individual capacities for money damages. *Id.* at 2.

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave need not be granted, however, where the amendment "would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The final factor—undue delay—weighs against allowing Crofts to amend. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming the district court's denial of a motion for leave to amend filed five days before the close of discovery where the additional claims would have required additional discovery, delaying

proceedings and prejudicing defendants). Here, Crofts did not move to amend his complaint until all deadlines in the scheduling order had passed, discovery had closed, and Defendants' Motion for Summary Judgment was fully briefed. Crofts has provided no justification for his failure to make such a motion in a timely manner.

More importantly, granting leave to amend would be an "exercise in futility." As the Court just explained, Crofts cannot succeed on his Eighth Amendment claim, and adding Warden Ramirez to this action will not change that outcome. Therefore, Crofts' Motion to Amend (Dkt. 33) is **DENIED**.

## V. ORDER

1. Defendants' Motion for Summary Judgment (Dkt. 27) is **GRANTED**.
2. Crofts' Motion to Amend his Complaint (Dkt. 33) is **DENIED**.
3. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: March 29, 2019

David C. Nye
Chief U.S. District Court Judge